UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UBALDO RAMIREZ | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:13-CV-394 |
| VS. | § | |
| | § | CRIM. ACTION NO. 2:12-CR-429-1 |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION

Movant Ubaldo Ramirez, a federal prisoner proceeding pro se, initiated this action pursuant to 28 U.S.C. § 2255 by filing a Motion to Vacate, Set Aside, or Correct Sentence. (Docket No. 1.)[1]  Movant was sentenced to 180 months imprisonment after pleading guilty to being a felon in possession of a firearm.[2]  The loaded firearm, along with some crack cocaine, was found in a vehicle occupied by Movant's wife and minor child.  Movant, who was a wanted fugitive, had fled the vehicle shortly before it was stopped and searched.  Movant's sentence took into account his extensive and troubling criminal history, which included (among many other things) two felony convictions for burglary of a habitation and a felony conviction for evading arrest with a vehicle.  Consistent with Fifth Circuit precedent at the time, Movant was sentenced pursuant to the Armed Career Criminal Act (ACCA), which resulted in a statutory mandatory minimum sentence of 15 years.  *See* 18 U.S.C. § 924(e).

In his § 2255 motion, Movant asserts that his attorney rendered ineffective assistance of counsel in several ways, all of which relate to counsel's failure to challenge (on Fourth Amendment grounds) the search of the car containing the gun and crack cocaine.  Movant later

---

[1]  Docket entry references are to the civil action, unless otherwise noted.
[2]  Movant was sentenced—and this § 2255 motion to vacate was filed—in the Corpus Christi Division of the Southern District of Texas.  It was later transferred to the McAllen Division of the Southern District of Texas after Judges Nelva Gonzalez Ramos and John D. Rainey recused themselves.  (Docket Nos. 4, 5.)

filed a motion to supplement his § 2255 motion to vacate, in which he argues that his 15-year sentence under the ACCA is unconstitutional in light of the Supreme Court's recent ruling in *Johnson v. Unites States*, 135 S. Ct. 2551 (2015). Respondent United States has filed a motion to dismiss addressing Movant's ineffective assistance claims. (Docket No. 22.) In responding to Movant's supplemental *Johnson* claim, Respondent argued that *Johnson* could not be applied retroactively based on then-existing Fifth Circuit precedent. (Docket No. 33.) The Supreme Court subsequently held in *Welch v. United States*, 136 S. Ct. 1257 (2016), that the ruling in *Johnson* applies retroactively.

After carefully considering Movant's § 2255 motion, the record of Movant's criminal case, and the applicable law, the undersigned concludes that Movant's § 2255 motion should be granted in part and denied in part. Specifically, pursuant to the Supreme Court's *Johnson* and *Welch* decisions, Movant's enhanced 15-year sentence under the ACCA should be vacated, and he should be resentenced. Movant's ineffective assistance claims relating to the search of the vehicle are meritless. The record conclusively shows that Movant was well-represented by experienced counsel and that counsel did not err in failing to challenge the search of the vehicle. Accordingly, for the reasons explained further below, it is recommended that the District Court grant in part and deny in part Movant's § 2255 motion.

## I. BACKGROUND

### A. The Underlying Criminal Charge[3]

On April 5, 2012, deputies with the U.S. Marshals Service Task Force received information that Movant, a wanted fugitive, and his wife, Nancy Ramirez, were in a vehicle

---

[3] The facts in the next two sections are drawn principally from Movant's Presentence Investigation Report (PSR). (Cr. Docket No. 34.) The PSR contains a detailed description of the facts relevant to the underlying criminal charges.

located in a parking lot in Corpus Christi, Texas.  The deputies proceeded to the location and observed the vehicle leaving the parking lot.   As they were following the vehicle, the deputies temporarily lost sight of it and suspected that Movant may have jumped out of the vehicle and fled on foot.  The deputies initiated a traffic stop on the vehicle and Mrs. Ramirez confirmed that Movant had been in the vehicle but had fled on foot after seeing the deputies following them.

After obtaining verbal consent from Mrs. Ramirez, the deputies searched the vehicle. Her consent was witnessed by four law enforcement officers.  The search revealed a .380 caliber pistol located in the center console of the vehicle.   The gun was loaded with six rounds of ammunition.   In addition, the deputies discovered a plastic bag containing 5.25 grams (net weight) of crack cocaine in the rear passenger door handle compartment.  Both the firearm and the bag containing the crack cocaine were within reach of Movant's three-year-old minor son, who was also a passenger in the vehicle.  Mrs. Ramirez was arrested, and her son was released to a family member.  At the time of her arrest, Mrs. Ramirez was on state probation.

After eluding the Marshals deputies, Movant fled to Mexico.  Approximately one month after his wife's arrest, Movant surrendered to authorities at the Laredo, Texas, port of entry.  On May 7, 2012, after Movant was transferred to the Nueces County Jail, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) interviewed him.  Movant stated that he had been "on the run" since 2008 due to felony arrest warrants.  He took responsibility for the firearm and the crack cocaine that were found in the car when his wife was arrested.  Movant stated that he bought the firearm for $50 from a crack cocaine addict, that he test-fired it at a gun range, and that he believed it was stolen.  He also stated that right before he got out of the vehicle and fled on foot, he dropped the bag containing the crack cocaine into the backseat area.  Movant further stated that he had been using and selling crack cocaine.

3

A criminal records check revealed that Movant had a lengthy criminal history that spanned over fifteen years and included numerous violent felonies, including two convictions for burglary of a habitation (2000 and 2002) and a conviction for evading arrest using a vehicle. Movant is a Mexican citizen who had returned to the United States illegally after multiple prior deportations.

**B.      Criminal Proceedings**

On June 13, 2012, a four-count indictment was filed in the Southern District of Texas, Corpus Christi Division, charging Movant with: 1) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); 2) illegal alien in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2); 3) illegal reentry after a previous deportation, in violation of 8 U.S.C. § 1326(a) & (b); and 4) possession of crack cocaine, in violation of 21 U.S.C. § 844(a).   Movant later pleaded guilty to Count 1 without a plea agreement.   After accepting Movant's guilty plea, the District Court ordered the Probation Office to prepare a Presentence Investigation Report (PSR).

The PSR calculated Movant's base offense level at 24.[4]   Four levels were added because Movant possessed a firearm in connection with another felony offense (possession of crack cocaine), resulting in an adjusted offense level of 28.   The Probation Office then determined that Movant was an "armed career criminal" based on his three prior convictions for violent felonies, and, as such, he was subject to the enhanced penalties found in 18 U.S.C. § 924(e).[5]   Movant's status as an armed career criminal resulted in an offense level of 33.   Although Movant had

---

[4] The PSR calculated Movant's base offense level at 24 as a result of his two previous felony convictions for crimes of violence.  (Cr. Docket No. 34, ¶ 16.)

[5] The three felony convictions that qualified Movant as an "armed career criminal" are as follows: 1) burglary of a habitation (2000); 2) burglary of a habitation (2002); and 3) evading arrest or detention using a vehicle (2005).  (Cr. Docket No. 34, ¶ 24 (citing 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4).)

pleaded guilty and confessed, the PSR did not grant him any credit for acceptance of responsibility because he had engaged in further criminal conduct while awaiting sentencing. Specifically, Movant illegally possessed a cellular phone while in custody at the detention center.[6] (*Id.* at ¶¶ 10-13.)

As a result of the numerous crimes that Movant has committed, the PSR calculated his criminal history at category VI.[7]  With an offense level of 33, this resulted in a Guidelines imprisonment range of 235 to 293 months.  In addition, based on his status as an armed career criminal, Movant was found to be subject to a statutory minimum term of 15 years imprisonment, and his statutory maximum was life imprisonment.  (Cr. Docket No. 34, ¶ 67 (citing 18 U.S.C. § 924(e)).)

Movant's attorney filed written objections to the PSR, arguing (among other things) that Movant should receive the full three-point credit for acceptance of responsibility.  (Cr. Docket No. 33, at 2-4.)  At the sentencing hearing, Movant confirmed that he "received a copy of th[e] Presentence Report," that he read it, and discussed it with his attorney.  (Cr. Docket No. 48, Sentencing Tr. 3.)  Movant was given an opportunity to address the Court, and he apologized to the Court for his actions.  (*Id.* at 11-12.)

---

[6] Marshals deputies found a cell phone and two chargers in the detention center dorm where Movant was being held.  Two witnesses identified the cell phone as belonging to Movant, and deputies discovered that the cell phone had been used to make several calls to Movant's girlfriend.  (*Id.* at ¶ 12.)

[7] The PSR calculated Movant's criminal history points at 13, which corresponded to a criminal history category of VI.  Movant received criminal history points for the following: 1) three points for tampering with physical evidence (2000); 2) three points for burglary of a habitation (2000); 3) three points for burglary of a habitation (2002); 4) one point for attempting to enter the United States illegally; and 5) three points for evading arrest using a vehicle (2004).  (Cr. Docket No. 34, ¶¶ 40-46.)  Movant also had numerous other convictions and encounters with law enforcement that did not result in any criminal history points, including the following: 1) felony unauthorized use of a motor vehicle (at age 14); 2) felony unauthorized use a motor vehicle (at age 15); 3) evading arrest using a vehicle (1999 and 2000); and 4) unlawfully carrying a weapon (2000).

Movant's attorney argued at length at sentencing that Movant should receive the full three-point credit for acceptance of responsibility.  (*Id.* at 4-6.)  He based his argument on the fact that Movant turned himself into authorities, confessed, and pleaded guilty.  (*Id.*)  The Government argued that Movant's actions, both before and after he turned himself into authorities, negated his initial acceptance of responsibility.  (*Id.* at 6-8.)  Ultimately, the Court agreed with Movant's counsel and found that he should receive the acceptance of responsibility credit.  (*Id.* at 8.)  With the acceptance of responsibility reductions (three points total), Movant's Guidelines sentencing range was dramatically reduced to 180 to 210 months (from 235 to 293 months).  (*Id.* at 9.)  After considering the factors under 18 U.S.C. § 3553(a), the Court sentenced Movant to 180 months, which was the statutory mandatory minimum term in light of the finding that Movant was an armed career criminal.  (*Id.* at 12-13.)

Movant did not file a direct appeal and subsequently timely filed the instant § 2255 motion to vacate.

## C.  Movant's Allegations and the Government's Response

In his § 2255 motion, Movant asserts that his attorney rendered ineffective assistance of counsel in several ways; however, all of the alleged deficiencies pertain to the search of the vehicle that led to the discovery of the firearm and drugs.  (Docket No. 1, ¶ 12.)  Movant alleges that his attorney should have: 1) interviewed Mrs. Ramirez regarding the circumstances of the search of the car; 2) conducted further investigation into the circumstances of the search; 3) filed and argued a motion to suppress the evidence that was seized from the car; and 4) properly advised Movant regarding the suppression issues in order to aid him in deciding whether to plead guilty.  (*Id.*)

6

Both Movant and Mrs. Ramirez filed affidavits addressing Movant's allegations.  (*Id.* at 10-12.)  Mrs. Ramirez's affidavit states as follows:

> On April 5, 2012, I was situated outside my vehicle leaning inside to remove my 3 year old son from rear seat restraints when several cars suddenly surrounded and blocked my vehicle.  One U.S. Marshal sprang from the car with a gun drawn, shouting "Who's in the vehicle?" as several others took positions around the vehicle.  They informed me that I was seen leaving a hair salon with my husband and while being verbally abusive and poking me, demanded to know his whereabouts.  As my husband had already seen them, exited the vehicle, and fled on foot before I parked, he was no longer in the immediate vicinity.  When I refused to cooperate further, I was handcuffed and placed in a Marshals' vehicle. I was told I was being charged with Harboring a Fugitive.  In response to a request to search my vehicle, I asked "Do I have a choice?"  The Marshal commented "not really" and without further discussion, commenced a search of the vehicle.  I never felt free to leave the area or to object to the search of the vehicle.  I was later charged with possession of a weapon that was found in a closed console within the vehicle.  The charges were subsequently dropped when my husband surrendered and took responsibility for the gun.  The vehicle in question is marital property.  The lawyers for my husband never questioned me about the stop or search.  I would have related the circumstances as set forth in this affidavit if requested and would have been available to testify at any court proceeding.  I remain willing to testify to the above facts at any further court proceeding.

(Docket No. 1, at 11-12 (grammar and punctuation changed).)  Movant states in his affidavit that he was married to Mrs. Ramirez and that the vehicle that was searched was acquired during their marriage.  (*See* Docket No. 1, at 10; Docket No. 2.)  Movant also states that his attorney never told him that the search was unlawful and that, had he known this, he would not have agreed to plead guilty.  (*Id.*)

In moving to dismiss, Respondent United States argues that "the record [ ] conclusively negate[s] the alleged factual predicates asserted for the first time [by Movant and Mrs. Ramirez] in support of the motion to vacate Movant's conviction."  (Docket No. 22, at 26.)  In addition, Respondent asserts that "[t]he record is clear about what counsel knew and acted on '**in light of all the circumstances as they appeared at the time,**' as required by *Strickland* and fails to

support a finding that 'counsel's performance fell below an objective level of reasonableness.'"
(*Id.* at 19 (emphasis in original).)

Pursuant to a Court order, affidavits addressing Movant's allegations have been filed by defense counsel in his underlying criminal case, former Assistant Federal Public Defender Sivani Babu[8] and former Supervisory Assistant Federal Public Defender Jason B. Libby.[9]   (Docket Nos. 17, 20, 21.)  AFPD Sivani was initially appointed to represent Movant in his underlying criminal case, and she did so up until August 6, 2012—the time of his first final pretrial conference—at which time the case was reassigned to SAFPD Libby.  Former AFPD Sivani summarized the relevant history of her representation:

> During the two months that I represented Mr. Ramirez, I spoke to him on at least six different occasions regarding his case.  We discussed thoroughly the application of the Armed Career Criminal enhancement and specifically discussed the search of the vehicle and the circumstances surrounding his surrender.
> ....
> I discussed the possible suppression issues with Mr. Ramirez and explained that I did not believe he had standing to challenge the search of the car.  Moreover, I explained that any other suppression issue we might have had would require the involvement of his wife.  He had made it clear from the outset that he wanted to leave his wife out of the matters, as she was the caretaker of their children and on state probation.
> ....
> In my representation of defendants as a former member of the Federal Public Defender's Office, I investigated and researched a number of suppression issues.  If the facts of the search in question had presented a colorable issue, or there had been any other suppression issue that did not require the involvement of Mr. Ramirez's wife, I would have filed a motion to suppress in Mr. Ramirez's

---

[8] At the time that AFPD Sivani filed her affidavit, she was "currently employed by the United States District Court for the Southern District of Texas as a law clerk for Senior United States District Judge Hayden Head in Corpus Christi, Texas.  (Docket No. 21, at 1.)  She was employed as an Assistant Federal Public Defender from November 2011 to December 2013.  (*Id.*)

[9] At the time that SAFPD Libby filed his affidavit, he was "currently a United States Magistrate Judge, serving in Corpus Christi Division of the Southern District of Texas."  (Docket No. 20, at 1.)  He was employed as an Assistant Federal Public Defender from June 2002 to May 2013, and "became the branch chief of the Corpus Christi Office of the Federal Public Defender in May 2009."  (*Id.*)

case, or discussed the need to file such a motion with then SAFPD Jason Libby
when the case was reassigned.

(Docket No. 21, at 1-2.)

Former SAFPD Libby began representing Movant on August 6, 2012, at his pretrial
conference, when AFPD Babu was unable to attend due to health-related reasons.  (Docket No.
20, at 3.)   The first extended meeting between SAFPD Libby and Movant occurred several
weeks later, on August 31, 2012.  Former SAFPD Libby described this meeting as follows:

> On August 31, 2012, I met with Mr. Ramirez in private in an attorney
> conference booth at the federal courthouse in Corpus Christi, Texas. I had
> determined at that time that I would represent Mr. Ramirez. The purpose of this
> consultation was to discuss with Mr. Ramirez the facts and law of his case, his
> trial and Constitutional rights, his decisions and strategy and matters relating to
> sentencing. During this consultation, I had sufficient information and documents
> about Mr. Ramirez' prior criminal history to advise Mr. Ramirez that he was an
> Armed Career Criminal if convicted of either Count One or Two. I further
> explained to Mr. Ramirez the punishment implications of being an Armed Career
> Criminal, including the 15-year mandatory minimum sentence and potential
> imprisonment for life. I had been unsuccessful in negotiating a plea agreement
> with the Assistant U.S. Attorney to allow Mr. Ramirez to plead guilty to a count
> or offense that would avoid the defendant being subjected to the Armed Career
> Criminal Act. I explained these negotiations to Mr. Ramirez.
>
> My practice as a defense counsel was to discuss possible defenses with
> clients along with the pros and cons of going to trial versus pleading guilty and
> related sentencing issues, including the Federal Sentencing Guidelines. I did so
> with Mr. Ramirez. I explained to Mr. Ramirez that he had a difficult, but
> defensible, case. Mr. Ramirez was not present when the firearm and drugs were
> found in the vehicle. Whether law enforcement ever obtained a clear visual
> identification of Mr. Ramirez was subject to being challenged. Further, Ms.
> Ramirez could invoke her spousal privilege and certainly had a claim to invoke
> her right to remain silent, thereby avoiding having to testify and implicate Mr.
> Ramirez. Further, Mr. Ramirez' confession was subject to being challenged, at
> least as an issue to the jury, because he maintained that he turned himself in and
> confessed to prevent his wife from being prosecuted. Regarding matters of
> suppression, I viewed as non-frivolous a possible motion to suppress Mr.
> Ramirez' statement to ATF Agents as being involuntary and unreliable if Mr.
> Ramirez had in fact turned himself in in exchange for his wife not being
> prosecuted. I discussed all of these matters with Mr. Ramirez.

Mr. Ramirez did not want to challenge the evidence or contest his guilt. He wanted to plead guilty and to keep his wife from being further involved, implicated or charged with a crime. Mr. Ramirez convinced me that he was in fact guilty of the offense and that he wanted to plead guilty. I believe Mr. Ramirez fully understood his options and trial rights and that he pleaded guilty knowingly and voluntarily.

(Docket No. 20, at 4-5.)  Further, in addressing the specific claims raised by Movant in his §

2255 motion, former SAFPD Libby explains:

Mr. Ramirez complains in his 2255 that I did not interview his wife and that I failed to investigate whether he had a viable constitutional challenge to the search of the vehicle. I do not believe that Mr. Ramirez had a strong argument for the suppression of the evidence recovered from the search of the vehicle in his case. While I do not recall having a detailed conversation with Mr. Ramirez about challenging the admissibility of the evidence recovered from the vehicle, I would not have spent a lot of time discussing with Mr. Ramirez a motion which I believed lacked merit. My practice as an attorney was to focus my efforts on matters that were consistent with my client's wishes and those which would have a favorable impact on the outcome of the case.

Mr. Ramirez fled the vehicle and arguably abandoned any claim he had to the lawfulness of the search of the vehicle. Whether Mr. Ramirez had a reasonable expectation of privacy in the abandoned property, under the circumstances of this case, is also questionable. Further, U.S. Marshals reported that Ms. Ramirez consented to a search of the vehicle. Assuming for the sake of argument that the Marshals coerced Ms. Ramirez into consenting to a search of the vehicle, Mr. Ramirez would have a significant hurdle in establishing that he had standing to challenge a violation of his wife's constitutional rights. In discussing with Mr. Ramirez his trial rights and strategy, Mr. Ramirez did not want his wife involved in the resolution of his case. Litigating a motion to suppress would have been inconsistent with Mr. Ramirez's instructions to me regarding not involving his wife in his case. These are among the reasons why I did not independently investigate the circumstances of search of Ms. Ramirez' vehicle. Further, I believe I did not talk with Ms. Ramirez prior to Mr. Ramirez pleading guilty for the same reasons.

(*Id.* at 6-7.)

In addition to alleging ineffective assistance of counsel, Movant later filed a motion to

supplement his § 2255 motion to vacate, in which he argues that his 15-year sentence under the

ACCA is unconstitutional in light of the Supreme Court's decision in *Johnson v. Unites States*,

135 S. Ct. 2551 (2015).  (*See* Docket Nos. 27, 28, 33, 37.)  Respondent United States filed a

response arguing that the *Johnson* ruling could not be applied retroactively on collateral review.

(Docket No. 33 (citing *In re Williams*, 806 F.3d 322, 326 (5th Cir. 2015).)  Respondent noted,

however, that the Supreme Court had granted certiorari in a case raising the retroactivity issue,

*Gregory Welch v. United States*, No 15-6418, 136 S.Ct. 790 (Jan. 8, 2016).  (Docket No. 33, at

n.1.)  In deciding the *Welch* case, the Supreme Court subsequently held that the rule announced

in *Johnson* applied retroactively.  *Welch v. United States*, 136 S. Ct. 1257 (2016).

Movant's claims will be addressed in the context of the standard of review for § 2255

actions.

## II.  ANALYSIS

### A.      28 U.S.C. § 2255

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a

significantly higher hurdle" than the plain error standard that would apply on direct appeal.

*United States v. Frady*, 456 U.S. 152, 166 (1982).  "Following a conviction and exhaustion or

waiver of direct appeal, [courts] presume a defendant stands fairly and finally convicted."

*United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*,

937 F.2d 228, 231-32 (5th Cir. 1991)).  "As a result, review of convictions under section 2255

ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be

raised for the first time on collateral review without a showing of cause and prejudice."

*Cervantes*, 132 F.3d at 1109.   Stated another way, relief under  § 2255 is "reserved for

transgressions of constitutional rights and for a narrow range of injuries that could not have been

raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."

*United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).  Subject to these constraints, there

are only four limited grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues; (2) challenges to the District Court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

**B.      Ineffective Assistance of Counsel Claims**

Movant claims that his attorney rendered ineffective assistance of counsel.[10]   An ineffective assistance of counsel claim is properly made for the first time in a § 2255 motion because it raises an issue of constitutional magnitude and generally cannot be raised on direct appeal.  *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002); *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992).

**1.      General Standard**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's

---

[10] Movant couches his claims in terms of "ineffective assistance of counsel," rather than a direct attack on the legality of the search and seizure at issue here.  The undersigned notes that had Movant asserted a Fourth Amendment claim, it would be procedurally barred from consideration in this § 2255 motion to vacate.  Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings.  *See United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).  A district court may consider a defaulted claim only if the petitioner can demonstrate either: (1) cause for his default and actual prejudice; or (2) that he is actually innocent of the crime charged.  *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999).  Movant did not file a direct appeal, and he has not made a showing of cause and prejudice to overcome his default.  As such, a Fourth Amendment claim attacking the search and seizure would be procedurally barred from consideration in this § 2255 action.  As such, Movant is limited to arguing his claims within the confines of the law as it pertains to ineffective assistance of counsel claims, as is discussed above.  *See* Part II.B.I.

performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90.

With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."). "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).

### 2.     Failure to Investigate and File a Motion to Suppress

Movant's ineffective assistance claims are closely related and will be addressed together. Movant asserts that his attorney rendered ineffective assistance of counsel when he failed to interview Mrs. Ramirez, failed to investigate the circumstances of the search of the vehicle she was driving, failed to file a motion to suppress the evidence that was seized from the vehicle, and failed to properly advise Movant about the viability of a motion to suppress. (Docket No. 1, at ¶

13

12.)  Movant relies entirely on his wife's affidavit for the proposition that her consent to search the vehicle was not voluntary.[11]   Respondent argues that "the record [ ] conclusively negate[s] the alleged factual predicates" of the claims, and that Movant has conclusively failed to show that "counsel's performance fell below an objective level of reasonableness, as required by the *Strickland* standard."  (Docket No. 22, at 19, 26.)

To prevail on his ineffective assistance claims, Movant must show that counsel's failure to interview Mrs. Ramirez and further investigate the circumstances of the search and seizure "was outside the broad range of what is considered reasonable assistance."  *See Dovalina*, 262 F.3d at 474–75.  Movant's failure to meet this burden is conclusively shown by two undisputed facts.

First, both of Movant's defense attorneys state that Movant repeatedly emphasized his desire not to involve his wife in his case.  (*See* Docket No. 20, at 5 ("He wanted to plead guilty and to keep his wife from being further involved, implicated or charged with a crime."); Docket No. 20, at 7 ("Mr. Ramirez did not want his wife involved in the resolution of his case."); Docket No. 21, at 3 ("I explained that any suppression issue (other than challenging standing) we might have had would require the involvement of his wife.  He made it clear from the outset that he wanted to leave his wife out of matters, as she was the caretaker of their children and on state probation.").)  Movant has not disputed this, nor could he.  The record shows that, about a month after his wife's arrest, Movant returned from Mexico (where he had fled) and surrendered to federal authorities.  Consistent with his stated desire to not involve his wife, Movant took full responsibility for the gun and crack cocaine found in the vehicle.  Movant never deviated from

---

[11]   Movant was not present when Mrs. Ramirez gave the deputies consent to search the vehicle. Knowing that there were one or more warrants for his arrest, Movant had jumped out of the car and fled on foot after seeing the deputies following them.

this course during his court proceedings.   For example, during his re-arraignment, Movant admitted under oath to the truth of the following facts (as stated by counsel for the Government):

> During the time Deputy Meeks was following the vehicle he momentarily lost eye contact with the vehicle and suspected that the Defendant may have jumped out of the vehicle and ran through the neighborhood. Deputy Meeks continued to follow the vehicle and a traffic stop was conducted and contact was made with the driver of the vehicle, who was identified as the Defendant's wife. The Defendant was no longer present in the vehicle. Agents were able to confirm that the Defendant had jumped out of the vehicle when the deputy lost sight of it. Deputy Meeks requested permission to search the vehicle for any weapons or drugs, and he was given verbal consent by the driver. During the search of the vehicle deputies located a firearm in the center console, which was identified as the Cobra Enterprise Model CA380, 380 caliber pistol, Serial Number CP030251, and found it to be loaded with six rounds of PPU380 caliber ammunition.

(Docket No. 9, Re-arraignment Tr. 53-54.)   Although Movant's re-arraignment was held about four months after he had surrendered himself, Movant did not suggest in any way that his wife's consent to search was involuntary.[12]  Similarly, at his sentencing hearing, Movant confirmed that he had read the PSR and discussed it with his attorney, but he made no attempt to challenge the facts as stated in the PSR (including those relating to his wife's consent).[13]  (Cr. Docket No. 11, Sentencing Tr. 3.)   Again, Movant's conduct was consistent with his desire—as he repeatedly stated to his attorneys—that he did not want to involve his wife in his case.

Of course, successfully challenging the voluntariness of the consent to search would have required the involvement of Mrs. Ramirez, as she was the one who consented to the search and her testimony would have been the only evidence to suggest that her consent was not voluntary. Filing a motion to suppress would have required Mrs. Ramirez to testify in court, and she would

---

[12]   After the prosecutor recited the facts of the case, the Court asked Movant if he heard and understood the statement, and if that is what happened in his case.  (Docket No. 9, Re-arraignment Tr. 56-57.)  Movant responded, "Yes, ma'am."  (*Id.* at 57.)  The Court further asked him: "Do you disagree with any part of the statement or do you want to add anything to it?"  (*Id.*) Again, Movant responded, "No, ma'am."  (*Id.*)
[13]   The PSR stated that the Marshals deputies searched the vehicle with consent.  (Cr. Docket No. 34, ¶ 4.)

have been subjected to cross-examination by the Government.   Given Movant's express instructions to both former AFPD Babu and former SAFPD Libby that he did not want to involve his wife, it was not unreasonable for them to decline to interview Mrs. Ramirez regarding her verbal consent to the search.[14]

The second undisputed fact is that neither Movant nor his wife ever advised defense counsel about her allegation that her consent to search the vehicle was coerced.   Movant and Mrs. Ramirez do not claim that they advised counsel that her consent had been coerced. Likewise, the affidavits of Movant's defense attorneys reflect that they did not know about her allegation.   The evidence in the record would have led counsel to reasonably believe that there was no legitimate basis to challenge the voluntariness of Mrs. Ramirez's consent.   For example,

---

[14] This is particularly true since, as both former defense attorneys note, succeeding on a motion to suppress would have been doubtful at best, even if Mrs. Ramirez had become involved in the case and testified that her consent was coerced.   The burden would have been on Movant to prove that his own Fourth Amendment rights were violated by the search of the vehicle.   *United States v. Iraheta,* 764 F.3d 455, 461 (5th Cir.2014) (citing *Rakas v. Illinois,* 439 U.S. 128, 130 n.1 (1978)).   Assuming that he could have made this showing, Movant would have also likely faced the argument that he had abandoned the vehicle by fleeing from the deputies.   "A defendant who abandons or disclaims ownership of property *prior to the search* does not have standing to challenge a search subsequent to his abandonment or disclaimer of that property." *Iraheta,* 764 F.3d at 461 (emphasis in original) (citation omitted).   The Government may also have argued that Mrs. Ramirez's consent was unnecessary since there was probable cause to arrest her for harboring a fugitive and there was reason to believe that evidence of that crime would be found in the vehicle (given that Movant had just fled from the car).   As the Fifth Circuit has recognized, "police may also search a vehicle incident to arrest 'when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.'"   *United States v. Clark,* 647 F. App'x 419, 423 (5th Cir. 2016) (quoting *Arizona v. Gant*, 556 U.S. 332, 343 (2009)).   In addition, had Mrs. Ramirez testified consistent with the allegations in her affidavit, it is questionable whether the Court would have found her testimony to be credible.   At the time of her arrest, Mrs. Ramirez was on state probation, and the facts suggest that she was knowingly harboring a fugitive.   Had she testified at a suppression hearing, Mrs. Ramirez may have found it necessary to invoke her Fifth Amendment rights during cross-examination in order to avoid incriminating herself.   Apart from credibility issues, her testimony about alleged coercion would likely have been disputed by multiple witnesses.   The sworn criminal complaint reflects that four law enforcement officers witnessed her give consent to search the vehicle.   (Cr. Docket No. 1, at 2.)   Presumably, all four officers would have disputed Mrs. Ramirez's version of the events relating to her consent to search.

the sworn statement attached to the criminal complaint states that four law enforcement officers witnessed her consent.  (Cr. Docket No. 1, at 2.)  And, as discussed above, it was reasonable for counsel to forego an interview of Mrs. Ramirez since Movant repeatedly insisted that he did not want to involve her.[15]

In sum, viewing counsel's conduct at the time of their representation, Movant has failed to show that their performance was in any way deficient with regard to the suppression issue.[16] *See Strickland*, 466 U.S. at 689-90; *Dovalina*, 262 F.3d at 474–75.  Movant's belated attempt to "second-guess counsel's conduct" falls far short of establishing ineffective assistance, and these claims should be rejected.

## C.     ACCA Enhancement/*Johnson* Claim

On July 20, 2015, Movant filed a motion to supplement his § 2255 motion to vacate, in which he attempts "to include a claim challenging his designation as an Armed Career Criminal based on a new retroactive rule of constitutional law."[17]  (Docket No. 27.)  Specifically, he argues that his 15-year enhanced sentence under the ACCA is unconstitutional in light of the

---

[15]  As noted, *see supra* n.14, Movant's defense attorneys were also reasonable in concluding that Movant would have had little (if any) chance of succeeding on a motion to suppress in light of the circumstances of this case.

[16]  Because Movant has failed to show that defense counsel performed deficiently, it is unnecessary to address the prejudice requirement of these claims.  *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").  Nevertheless, it should be noted that Movant has also failed to establish that the result of his criminal proceedings would have been different but for the alleged errors by counsel.  *See Strickland*, 466 U.S. at 694.  The record shows that it is highly unlikely that Movant would have prevailed on a suppression motion.  *See supra* n.14.

[17]  Approximately six months later, on January 20, 2016, Movant filed a duplicate motion to supplement.  (*See* Docket No. 28.)

17

Supreme Court's ruling in *Johnson v. Unites States*, 135 S. Ct. 2551 (2015).[18]  (*See* Docket Nos. 27, 28, 37.)

> The Supreme Court in *Welch* explained the *Johnson* decision as follows:
>
> Federal law prohibits any felon—meaning a person who has been convicted of a crime punishable by more than a year in prison—from possessing a firearm.  18 U.S.C. § 922(g).  A person who violates that restriction can be sentenced to prison for up to 10 years. § 924(a)(2).  For some felons, however, the Armed Career Criminal Act imposes a much more severe penalty.  Under the Act, a person who possesses a firearm after three or more convictions for a "serious drug offense" or a "violent felony" is subject to a minimum sentence of 15 years and a maximum sentence of life in prison. § 924(e)(1).  Because the ordinary maximum sentence for a felon in possession of a firearm is 10 years, while the minimum sentence under the Armed Career Criminal Act is 15 years, a person sentenced under the Act will receive a prison term at least five years longer than the law otherwise would allow.
>
> The Act defines "violent felony" as
>
> > "any crime punishable by imprisonment for a term exceeding one year ... that—
> >
> > "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B).
>
> Subsection (i) of this definition is known as the elements clause.  The end of subsection (ii)—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is known as the residual clause.  *See Johnson*, *supra*, at ——, 135 S. Ct., at 2555–2556.  It is the residual clause that *Johnson* held to be vague and invalid.

---

[18] A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final. 28 U.S.C. § 2255(f).  Movant's *Johnson* claim was filed more than one year after his judgment became final.  However, § 2255 also provides that the one-year limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that the new rule in *Johnson* applied retroactively on collateral review.  *Id*. at 1265.  As such, Movant's *Johnson* claim is not time barred.

. . . .

The *Johnson* Court held the residual clause unconstitutional under the void-for-vagueness doctrine, a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States).   The void-for-vagueness doctrine prohibits the government from imposing sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.*, at ——, 135 S. Ct., at 2556. *Johnson* determined that the residual clause could not be reconciled with that prohibition.

*Welch*, 136 S. Ct. at 1261-62.

As noted, Movant was sentenced under the ACCA before *Johnson* and *Welch* were decided.  Movant pleaded guilty in 2012 to one count of being a felon in possession of a firearm and ammunition.  (Cr. Docket No. 34, ¶ 1, 2 (citing 18 U.S.C. §§ 922(g) and 924(a)(2)).)  The Probation Office prepared a PSR finding that Movant had three prior violent felony convictions, including two convictions for burglary of a habitation and one conviction for evading arrest using a vehicle.  (Cr. Docket No. 34, ¶¶ 6, 24.)  Based on these convictions, Movant was found to be an armed career criminal, and the penalty that he faced was raised from a statutory maximum sentence of 10 years to a statutory mandatory minimum sentence of 15 years. *Compare* 18 U.S.C. § 924(a)(2) *with* § 924(e).

Movant's two prior Texas felony convictions for burglary of a habitation are "generic burglary" convictions for purposes of the ACCA and support the application of the enhanced sentence in § 924(e).[19] *United States v. Moreno*, 245 F. App'x 399, 401-02 (5th Cir. 2007); *see*

---

[19] Although the Court in *Joslin* found that Texas felony convictions for burglary of a habitation under § 30.02(a)(1) "coincides with the 'generic' burglary definition necessary to prove a 'violent felony' for the purposes of the ACCA," it also noted that the Fifth Circuit "does not recognize § 30.02(a)(3) as a generic burglary because it lacks the element of intent." *Joslin*, 487 F. App'x at 142-43.  In any event, it is clear in this case that Movant's two felony convictions for burglary of a habitation were pursuant to § 30.02(a)(1) and not (a)(3), and thus the burglary

*also United States v. Joslin*, 487 F. App'x 139, 142-43 (5th Cir. 2012).   However, Movant's felony conviction for evading arrest using a vehicle is not an enumerated offense under the ACCA.   Rather, courts, including the Fifth Circuit, had found that it qualifies as a crime of violence based on the "residual clause."   *United States v. Harrimon*, 568 F.3d 531, 534 (5th Cir. 2009) ("[W]e must consider whether [evading arrest using a vehicle] 'otherwise involves conduct that presents a serious potential risk of physical injury to another' under the 'residual' provision of clause (ii) of § 924(e)(2)(B)".); *see also United States v. Arnick*, 418 F. App'x 334, 334-35 (5th Cir. 2011) (same).

Movant was convicted in Texas of felony evading arrest or detention using a vehicle, in violation of Texas Penal Code § 38.04.   (Cr. Docket No. 37, at 36-50.)   That is the same offense that the Fifth Circuit has found to qualify as a "violent felony" for purposes of the ACCA. *Harrimon*, 568 F.3d at 532.   Specifically, the Fifth Circuit found that evading arrest or detention using a vehicle, under Texas law, "'involves conduct that presents a serious potential risk of physical injury to another' under the 'residual' provision of clause (ii) of § 924(e)(2)(B)." *Id.* at 534 (quoting § 924(e)).   Consistent with this Fifth Circuit precedent—which was controlling law at the time—the District Court properly found that Movant had committed three crimes of violence for purposes of the ACCA.

About three years later, however, the Supreme Court in *Johnson* "held the residual clause unconstitutional under the void-for-vagueness doctrine, a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States)."   *Welch*, 136 S. Ct. at 1261-62. Accordingly, Movant's conviction for evading arrest using a vehicle no longer qualifies as his

convictions were valid for the enhanced sentence pursuant to the ACCA.  (Cr. Docket No. 37, at 1-35.)

20

third crime of violence so as to invoke the 15-year mandatory minimum enhanced sentence under the ACCA.  Movant is thus entitled to resentencing in light of Supreme Court's ruling in *Johnson*.

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that that Movant's § 2255 Motion to Vacate (Docket No. 1) be GRANTED in part and DENIED in part.  Specifically, it is recommended that the Court find that pursuant to *Johnson v. Unites States*, 135 S. Ct. 2551 (2015), Movant's prior offense of evading arrest or detention using a vehicle no longer qualifies as a crime of violence for purposes of the ACCA.  As such, it is recommended that the Court VACATE Movant's sentence of 180 months and set Movant for resentencing before the District Court.  It is further recommended that all of Movant's other claims alleging ineffective assistance of counsel be DENIED.  For the reasons discussed below, it is further recommended that Movant be denied a certificate of appealability.

### CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Movant has not yet filed a notice of appeal, the recently-amended § 2255 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, RULES GOVERNING SECTION 2255 PROCEEDINGS.  Because the undersigned recommends the partial dismissal of Movant's § 2255 action, it is necessary to address whether Movant is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial

of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of § 2255 proceedings).  An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329.  As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

Here, Movant's § 2255 claims alleging ineffective assistance of counsel should be dismissed on their merits.  For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable or wrong the conclusion that Movant's ineffective assistance of counsel claims lack merit, nor are the claims he presents adequate to deserve encouragement to proceed further.  Accordingly, Movant is not entitled to a COA.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Movant and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo

review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on February 17, 2017.

Peter E. Ormsby
United States Magistrate Judge